UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH SALVI, an individual; E.Y. and R.Y., minors, by and through their Guardians,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO; ANA BURGESS, individually JOSE CINTRON, individually, MAGGIE NAJOR, individually; and DOES 1 through 10 ,<br><br>Defendants. | Case No.: 18cv1936 DMS (MDD)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS AND (2) DENYING THE COUNTY'S MOTION TO DISMISS** |

This case comes before the Court on two separate motions to dismiss; one filed by the Individual Defendants, Ana Burgess, Jose Cintron and Maggie Najor, and the other filed by Defendant County of San Diego. Plaintiffs filed an opposition to each motion, and the separate Defendants each filed a reply brief. For the reasons set out below, the Court grants in part and denies in part the Individual Defendants' motion and denies the County's motion.

/ / /

/ / /

# I.
# BACKGROUND[1]

On August 18, 2017, officers from the National City Police Department responded to a report of domestic violence at the residence of Plaintiffs Elizabeth Salvi and her children, E.Y. and R.Y. (FAC ¶ 25.) The responding officers arrested Ms. Salvi's then-husband and step-father of the children Jesus Delgado. (*Id.*) The officers determined the children did not need protective custody, and therefore left them in Ms. Salvi's care. (*Id.*)

Three days later, Defendant Burgess, an employee of the County's Social Services Department, went to R.Y.'s school to interview him. (*Id.* ¶¶ 26-28.) R.Y. is severely autistic, and his special education teacher accompanied him to that interview. (*Id.* ¶ 27.) After a conversation between Burgess, R.Y. and his teacher, Burgess "demanded" that the teacher leave the room. (*Id.* ¶ 34.) After waiting outside for approximately ten minutes, the teacher knocked on the door and told Burgess that R.Y. needed to go to lunch. (*Id.* ¶ 35.) Thereafter, the teacher called Ms. Salvi to discuss what had happened. (*Id.* ¶ 37.)

Plaintiffs allege that after interviewing R.Y., Burgess went to E.Y.'s school with the intent to interview him. (*Id.* ¶ 38.) However, Ms. Salvi intervened, and accused Burgess of violating her constitutional rights. (*Id.*)

---

[1] The background set out below is based on the facts alleged in Plaintiffs' First Amended Complaint ("FAC"). Defendants request that the Court take judicial notice of a number of documents in deciding the present motion, but Plaintiffs object to that request. Some of the documents at issue are referred to in the FAC, (FAC ¶¶ 20-21, 42, 50, 63), and thus subject to consideration on the present motion under the incorporation by reference doctrine. *Steinle v. City and County of San Francisco*, 919 F.3d 1154, No. 17-16283, 2019 WL 1323172, at *5-6 (9th Cir. Mar. 25, 2019). However, to the extent these documents raise disputes about the facts alleged in the FAC, they are not subject to judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (stating court cannot take judicial notice of disputed facts contained in public records), *pet. for cert. filed*, (U.S. Jan. 31, 2019) (No. 18-1010). Thus, to the extent these documents raise a dispute about the facts, the Court assumes the facts as alleged in the FAC are true in deciding the present motion.

Later that day, Burgess went to Plaintiffs' home to speak with Ms. Salvi. (*Id.* ¶ 39.) Ms. Salvi reiterated her belief that Burgess was violating Plaintiffs' constitutional rights, after which Burgess "became rude and aggressive to the family[.]" (*Id.* ¶ 40.) Plaintiffs allege: "BURGESS threatened ELIZABETH [SALVI] with removal of the MINORS if she did not follow her demands and instruction. BURGESS stated that ELIZABETH would never see her kids again unless she obtained a restraining order and divorced her husband." (*Id.*) Burgess then "demanded" that Ms. Salvi sign a "Safety Plan" concerning her children. (*Id.* ¶¶ 42-43.) Plaintiffs allege Ms. Salvi complied with that Plan in all respects. (*Id.* ¶ 44.)

Plaintiffs allege that after the Safety Plan was implemented, Burgess demanded that Ms. Salvi take a drug test. (*Id.* ¶ 49.) Specifically, Plaintiffs allege Burgess told Ms. Salvi that if she did not drug test by 6:00 p.m., Burgess would "come after her." (*Id.*)

Plaintiffs allege Burgess followed up on that threat by requesting a protective custody warrant to detain the children. (*Id.* ¶ 50.) Plaintiffs allege Burgess "knowingly provided fraudulent information to the Juvenile Court Judge" to obtain that warrant. (*Id.*) Specifically, Plaintiffs allege:

> BURGESS falsely stated that ELIZABETH [SALVI] had not prevented the step-father further access to the MINORS; that ELIZABETH had not included E.Y. on the Temporary Restraining Order; and that ELIZABETH was preventing BURGESS from speaking with the MINORS. BURGESS intentionally omitted exculpatory evidence that ELIZABETH had not allowed the step-father back into the home and that two different Superior Court Judges had issued restraining orders against the step-father.

(*Id.* ¶ 51.)

After obtaining the warrant, Burgess went to Plaintiffs' home, accompanied by several law enforcement officers. (*Id.* ¶ 52.) After gaining entrance to the home, the officers removed the children. (*Id.* ¶ 55.) The children were taken to Polinsky Children's Center, where they remained for approximately two weeks. (*Id.* ¶ 59.) After a disposition
///

hearing in Juvenile Court on October 17, 2017, the children were returned to their mother's custody. (*Id.* ¶ 71.)

On August 20, 2018, Plaintiffs filed the present case against the County of San Diego, Burgess, Cintron, Najor and the City of National City alleging claims for: (1) retaliation in violation of Salvi's First Amendment rights, (2) violation of Plaintiffs' rights to familial association under the First Amendment, (3) violation of Plaintiffs' Fourth Amendment rights, (4) violation of Salvi's Fourteenth Amendment rights, (5) violation of Plaintiffs' Fourteenth Amendment rights, (6) an unconstitutional policy, custom or practice against the County and City, (7) violation of California Civil Code § 52.1 ("the Bane Act"), (8) intentional infliction of emotional distress, and (9) negligence. Plaintiffs filed a First Amended Complaint on October 24, 2018, that omits the City as a Defendant and Plaintiffs' second claim for relief. The present motions followed.

## II.

## DISCUSSION

The Individual Defendants raise a number of arguments in support of their motion to dismiss. First, they argue they are entitled to qualified immunity from Plaintiffs' first three claims. Second, they assert Plaintiffs' first and fourth claims are barred by the *Rooker-Feldman* doctrine and issue preclusion. The Individual Defendants also contend Plaintiffs have failed to set forth sufficient facts to support their fourth claim. Third, the Individual Defendants argue Plaintiffs have failed to state claims against Defendants Cintron and Najor. Fifth, the Individual Defendants assert Plaintiffs have failed to state any claims under state law. The County also raises a number of arguments, including that Plaintiffs have failed to meet the requirements of Federal Rule of Civil Procedure 8, failed to state sufficient facts to support their claims, and that the County is immune from Plaintiffs' state law claims.

**A.      Legal Standard**

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court established a more stringent standard of review for

12(b)(6) motions. To survive a motion to dismiss under this new standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

"Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citing *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)). In *Iqbal*, the Court began this task "by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Id.* at 680. It then considered "the factual allegations in respondent's complaint to determine if they plausibly suggest an entitlement to relief." *Id.* at 681.

**B.     The Individual Defendants' Motion**

Turning first to the Individual Defendants' motion, they argue Plaintiffs' first three claims should be dismissed based on qualified immunity, Plaintiffs' fourth claim is barred by the *Rooker-Feldman* doctrine, issue preclusion and otherwise fails to state a claim, Plaintiffs have failed to allege claims for supervisory liability against Defendants Cintron and Najor, and Plaintiffs have failed to state claims under state law.

<u>1.     Qualified Immunity</u>

The Individual Defendants' lead argument on claims one, two and three is that these claims are barred by qualified immunity. Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Claims of qualified immunity require the court to consider two questions: (1) whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the defendant's conduct violated a constitutional right, *Saucier v. Katz*, 533 U.S. 194, 201 (2001), and (2) whether

5

18cv1936 DMS (MDD)

the right was clearly established—that is, whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202.

### *a.* First Amendment Claim

Plaintiffs' first claim for relief alleges Defendant Burgess retaliated against Plaintiff Salvi in violation of her First Amendment rights to object to and criticize Burgess for her interactions with Salvi's children. Specifically, Plaintiffs allege Burgess initiated and conducted an investigation to "interfere" with Salvi's custody rights to her children in retaliation for Salvi's complaints about Burgess's conduct. (FAC ¶ 83.)

> To prevail on a First Amendment retaliation claim, a plaintiff must show: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."

*Buckheit v. Dennis*, 713 F.Supp.2d 910, 921 (N.D. Cal. 2010) (quoting *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (quotation marks omitted). Here, Defendants argue Plaintiffs have failed to identify the constitutionally protected activity Salvi was engaged in, and Plaintiffs have failed to allege "facts establishing that Burgess acted in retaliation to that activity." (Individual Defs.' Mot. at 8.) Even if the facts allege a violation of Salvi's constitutional rights, Defendants assert that right was not clearly established.

Contrary to Defendants' first argument, Plaintiffs have identified the constitutionally protected activity in which Salvi was engaged. Specifically, Plaintiffs allege Salvi "asserted her constitutional rights as to the interview of E.Y.[,]" and "criticized BURGESS for her actions and repeatedly told BURGESS that she knew her constitutional rights were being violated." (FAC ¶ 38; *see also id.* ¶ 41 ("ELIZABETH repeatedly expressed to BURGESS that she believed her rights were being violated by BURGESS through her actions and demands.")) Thus, Plaintiffs have identified the constitutionally protected activity in which Salvi was engaged.

///

Plaintiffs have also alleged facts to support their allegation that Burgess acted in retaliation for Salvi's constitutionally protected conduct. For example, Plaintiffs allege "BURGESS became rude and aggressive to the family when ELIZABETH again asserted that she believed BURGESS was violating the PLAINTIFFS' constitutional rights." (*Id.* ¶ 40.) They also allege Burgess threatened Salvi "with the removal of the MINORS if she did not follow her demands and instructions[,]" (*id.*), and that Burgess followed through on that threat and removed Salvi's children from her care and custody. (*Id.* at 55.) Thus, Plaintiffs have alleged facts to support their allegation that Burgess acted in retaliation to Salvi's constitutionally protected activity of speaking out against Burgess's actions.

To the extent Defendants are also arguing Plaintiffs have failed to allege Burgess' conduct was "substantially motivated" or caused by Salvi's constitutionally protected speech, that argument also fails to warrant dismissal of the claim. Although the domestic violence report at Plaintiffs' home and Burgess's statutory duty to investigate claims of child abuse may have motivated her initial investigation, the chronology and temporality of events alleged in the FAC, *i.e.*, Salvi's complaints about Burgess's behavior followed by Burgess's threats to remove Salvi's children and her subsequent removal of the children, give rise to another reasonable inference, namely that Burgess's removal of Salvi's children was substantially motivated by Salvi's constitutionally protected activity. *See Coszalter v. City of Salem*, 320 F.3d 968, 977-78 (9th Cir. 2003) (stating timing may show retaliation was a substantial or motivating factor behind defendant's conduct). This is especially so given Plaintiffs' allegations that the officers who responded to the domestic violence report "did not determine that the Minors needed protective custody[.]" (FAC ¶ 25.) Under these circumstances, the claim is not subject to dismissal for failure to state a claim. *See Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiffs' complaint survives a motion to dismiss under Rule 12(b)(6).")

That Plaintiffs have set forth sufficient facts to support a claim for violation of Salvi's First Amendment rights, however, does not resolve the issue of qualified immunity.

7

18cv1936 DMS (MDD)

That issue also requires the Court to consider whether the right at issue was clearly established. In *Hartman v. Moore*, 547 U.S. 250 (2006), the Supreme Court stated "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out[.]" *Id.* at 256 (citations omitted). The Courts of Appeal have similarly held that the right to criticize public officials is clearly established, as is the right to be free from retaliation for that conduct. *Bloch v. Ribar*, 156 F.3d 674, 682-83 (6th Cir. 1998) (citing cases from Tenth, Second and Ninth Circuits finding right to criticize public officials is clearly established). *See also Trulock v. Freeh*, 275 F.3d 391, 405-06 (4th Cir. 2001) (holding "it was clearly established at the time of the search that the First Amendment prohibits an officer from retaliating against an individual for speaking critically of the government); *Solomon v. Petray*, 795 F.3d 777, 787-88 (8th Cir. 2015) (stating it is well-settled that First Amendment prohibits government officials from subjecting individual to retaliatory action on basis of constitutionally protected speech).

Here, the Individual Defendants argue the specific right at issue, namely Salvi's right to be free from retaliation in the form of her children being removed from her custody for her constitutionally protected right to speak out against a government actor, was not clearly established, therefore they are entitled to qualified immunity. In essence, Defendants appear to be arguing that since there is no case directly on point, the right at issue here is not clearly established. However, the Supreme Court "does not require a case directly on point" to show that a right is clearly established for purposes of qualified immunity. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The cases cited above clearly establish that individuals have a right to be free from retaliation for engaging in constitutionally protected speech that is critical of public officials, and in light of those cases, it would have been clear to a reasonable social worker that removing a child from his parent's custody in retaliation for the parent's constitutionally protected speech was unlawful. Thus, the Individual Defendants are not entitled to qualified immunity from Salvi's First Amendment claim.

### *b.* *Fourth Amendment Claim*

In their second claim, Plaintiffs allege Defendants violated their Fourth Amendment rights to be free from unreasonable searches and seizures. Specifically, Plaintiffs allege Defendants violated R.Y.'s right to be free from unreasonable seizures when they interrogated him at school,[2] and Defendants violated R.Y.'s and E.Y.'s rights to be free from unreasonable searches when they performed medical examinations on R.Y. and E.Y. without parental consent. Defendants argue Plaintiffs' claim about the interview must be dismissed because the interview did not violate Salvi or E.Y.'s rights, and even if there was a violation of Plaintiffs' constitutional rights, those rights were not clearly established. Defendants also assert Plaintiffs' claim about the examinations must be dismissed for failure to satisfy Federal Rule of Civil Procedure 8.[3]

On the latter argument, the Court disagrees with Defendants that Plaintiffs have failed to satisfy the requirements of Rule 8. Contrary to Defendants' assertion, Plaintiffs state the examinations of R.Y. and E.Y. occurred when Burgess and two other social workers arrived at Plaintiffs' home on September 20, 2017. (FAC ¶ 58.) The facts alleged set forth "a short and plain statement of the claim[,]" and thus the requirements of Rule 8 are satisfied.

As to the interview of R.Y., Defendants' arguments appear to be directed at the failure to allege a violation of Salvi's or E.Y.'s rights, not the failure to allege a violation

/ / /

---

[2] In their opposition to the motion to dismiss, Plaintiffs assert Burgess also interviewed E.Y. at school. (Opp'n to Individual Defs.' Mot. at 7.) This assertion is not included in the FAC. Rather, the allegations in the FAC make it appear that Burgess went to E.Y.'s school in anticipation of interviewing E.Y., but Salvi intercepted Burgess before that interview occurred. (FAC ¶ 38.) In light of those allegations, and the failure to mention E.Y. in other areas of the FAC, (*see id.* ¶ 89), the Court construes the FAC as alleging a claim arising out of the interview of R.Y. only.

[3] The County also raises a Rule 8 argument in its motion to dismiss. The Court rejects that argument for the reasons set out below.

of R.Y.'s rights. As to R.Y., Defendants appear to argue his rights were not clearly established, therefore Defendants are entitled to qualified immunity from the claim.

Plaintiffs respond that the right was clearly established in light of *Greene v. Camreta*, 588 F.3d 1011 (9th Cir. 2009). However, the Supreme Court vacated the Fourth Amendment portion of that decision in *Camreta v. Greene*, 563 U.S. 692 (2011). In light of that vacatur, courts have subsequently found the Fourth Amendment right at issue here is not clearly established. *See Williams v. County of San Diego*, No. 17cv815-MMA (JLB), 2017 WL 6541251, at *6-7 (S.D. Cal. Dec. 21, 2017) (finding defendants entitled to qualified immunity "because the right was not clearly established at the time of the interviews."); *Capp v. County of San Diego*, No. 16-CV-2870-AJB-MDD, 2017 WL 1400148, at *5 (S.D. Cal. Apr. 19, 2017) (concluding defendants "entitled to qualified immunity in the absence of binding authority establishing that a social worker's interview of a child at school violated the child's Fourth Amendment rights."), *appeal docketed*, No. 18-55119 (9th Cir. Jan. 29, 2018). In light of those decisions, the Court cannot say the right at issue here was clearly established. Thus, Defendants are entitled to qualified immunity from Plaintiffs' Fourth Amendment claim.

### *c.* *Fourteenth Amendment Claim*

In their third claim, Plaintiffs allege Defendants violated Salvi's rights under the Fourteenth Amendment. Specifically, Plaintiffs allege Defendants' removal of Salvi's children, their unlawful seizure of R.Y. at school and their unlawful search of R.Y. and E.Y. violated Salvi's "parental rights, the right to privacy, family integrity, and the right to familial relations." (FAC ¶ 99.) Defendants argue Plaintiffs have failed to allege a violation of Salvi's constitutional rights, and even if they have, that right was not clearly established.

To support their first argument that Plaintiffs have failed to allege the violation of a constitutional right, Defendants rely on evidence outside FAC. In essence, Defendants' argument is there was no violation of Salvi's constitutional rights, not that Plaintiffs have

///

failed to allege sufficient facts to support that claim. Because the merits of Plaintiffs' claim are not at issue here, the Court declines to further address this argument.

Instead, the Court turns to Defendants' other argument, namely that the right alleged was not clearly established. As to Defendants' removal of Salvi's children from their home, Ninth Circuit "case law clearly establishes that the rights of parents and children to familial association under the Fourteenth, First, and Fourth Amendments are violated if a state official removes children from their parents without their consent, and without a court order, unless information at the time of the seizure, after reasonable investigation, establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury, and the scope, degree, and duration of the intrusion are reasonably necessary to avert the specific injury at issue." *Keates v. Koile*, 883 F.3d 1228, 1237-38 (9th Cir. 2018). Thus, Defendants are not entitled to qualified immunity from this aspect of Salvi's Fourteenth Amendment claim.

As to the other aspects of the claim, however, namely Defendants interview of R.Y. and examinations of R.Y. and E.Y., it appears Defendants would not have been on notice that their conduct violated a clearly established right. *See McManus v. County of San Diego*, No. 15cv0138 JM(RBB), 2016 WL 3552007, at *4-5 (S.D. Cal. June 30, 2016) (rejecting contention defendants "violated clearly established federal constitutional law when they assisted the police in a child abuse investigation by removing 14-year-old ... from his school and transporting him to Polinsky where he was interviewed.") Plaintiffs' citation to *Mann v. County of San Diego*, 907 F.3d 1154 (9th Cir. 2018), does not change this result as the examinations at issue here are not alleged to be as intrusive as the examinations at issue in *Mann*. *Id.* at 1165 (describing "significantly intrusive" nature of medical examinations). Thus, the Court finds Defendants are entitled to qualified immunity from Plaintiffs' Fourteenth Amendment claim to the extent it is based on the interviews and examinations of Salvi's children.

/ / /

/ / /

### 2. Judicial Deception

In their fourth claim, Plaintiffs allege the Individual Defendants violated Plaintiffs' rights under the Fourteenth Amendment when they presented false statements or omitted material information from the protective custody warrant, the juvenile dependency petition and reports filed in juvenile court. (FAC ¶ 112.) Defendants argue Plaintiffs have failed to set forth sufficient facts to support this claim, and even if the claim is sufficiently pleaded, it is subject to dismissal pursuant to the *Rooker-Feldman* doctrine and issue preclusion.

A claim for judicial deception has two elements. First, the plaintiff must "establish that the warrant affidavit contained misrepresentations or omissions material to the finding of probable cause[.]" *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011). Second, the plaintiff must "make a 'substantial showing' that the misrepresentations or omissions were made intentionally or with reckless disregard for the truth." *Id.* Defendants argue Plaintiffs have failed to allege sufficient facts to support either of these elements.

The Court disagrees that Plaintiffs have failed to specify any allegedly false or misleading statements. Indeed, Defendants concede Plaintiffs identified specific examples of false and/or misleading statements in the FAC. (Individual Defs.' Mot. at 16.) The Court also disagrees that Plaintiffs have failed to allege how the statements were false and/or misleading, (*see* FAC ¶ 65), or that the misrepresentations and/or omissions were material. (*See id.* ¶¶ 64, 68.) However, the Court agrees that Plaintiffs have failed to allege sufficient facts to support their allegation that Defendants' misrepresentations or omissions were made intentionally or with reckless disregard for the truth. On this element, Plaintiffs have not alleged facts, but simply conclusory allegations that Defendants acted "deliberately or recklessly." (*Id.* ¶ 112.) Absent facts to support this allegation, this claim must be dismissed.[4]

---

[4] Defendants also move to dismiss this claim, and Plaintiffs' first claim, on the grounds they are barred by the *Rooker-Feldman* doctrine and issue preclusion. The Court disagrees

12

18cv1936 DMS (MDD)

### 3. Supervisory Liability

Next, Defendants argue Plaintiffs have failed to allege sufficient facts to support their claims against Defendants Cintron and Najor. The premise of this argument is that Plaintiffs' claims against these Defendants "are based solely on their supervision of Burgess'[s] conduct, rather than their direct involvement." (Individual Defs.' Mot. at 19.) This premise, however, is incorrect. Plaintiffs allege Defendants Cintron and Najor, along with Defendant Burgess, drafted the Detention Report[,] (FAC ¶ 63), and that Defendant Najor also signed the detention report. (*Id.* ¶ 65.) This conduct, if proven, may establish that Defendants Cintron and Najor personally participated in the alleged violation of Plaintiffs constitutional rights, not that they merely supervised Defendant Burgess's conduct. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon a showing of personal participation by the defendant.") (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979)). Accordingly, Defendants' argument does not warrant dismissal of Plaintiffs' claims against Defendants Cintron and Najor.[5]

///

---

with both of these arguments. Contrary to Defendants' suggestion, Plaintiffs are not here "assert[ing] as a legal wrong an allegedly erroneous decision by a state court, and seek[ing] relief from a state court judgment based on that decision[.]" *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003). Rather, the legal wrongs at issue in these claims are the Individual Defendants' alleged misrepresentations and omissions to the juvenile court in connection with the protective custody warrant and juvenile dependency petition (claim four), and Defendant Burgess's alleged retaliation against Salvi for her protected constitutional activity (claim one). Based on these allegations, *Rooker-Feldman* does not bar jurisdiction. *Id.* Issue preclusion also does not apply here as the issues of whether the Individual Defendants made misrepresentations or omissions to the juvenile court and whether Defendant Burgess retaliated against Salvi were not already litigated and determined in a previous proceeding between the same parties. *Pike v. Hester*, 891 F.3d 1131, 1138 (9th Cir. 2018) (citing *Clark v. Bear Stearns & Co., Inc.*, 966 F.2d 1318, 1320 (9th Cir. 1992)).
[5] The Individual Defendants' raise a similar argument on Plaintiffs' state law claims against Defendants Cintron and Najor. (*See* Individual Defs.' Mot. at 21-22.) For the reasons set out above, the Court also rejects that argument.

#### 4. State Law Claims

The Individual Defendants' final argument is that Plaintiffs' state law claims must be dismissed because Plaintiffs failed to comply with the California Tort Claims Act and because Defendants are immune from liability.

On the Claims Act argument, specifically, the Individual Defendants argue Plaintiffs failed to identify Defendants Cintron and Najor in their claim forms, and failed to allege any facts in support of their claims under the Bane Act and for negligence. However, the Court is not persuaded. Contrary to Defendants' suggestion, a claim is not subject to dismissal simply because one of the defendants named in a complaint is not identified in the government claim form. Indeed, California Government Code § 910 states the claim must include: "The name or names of the public employee or employees causing the injury, damage, or loss, *if known*." Cal. Govt. Code § 910(e) (emphasis added). Furthermore, the minor Plaintiffs' claim forms specifically reference potential claims for negligence and violations of the Bane Act. (*See* Req. for Judicial Notice, Ex. M.) Under these circumstances, the purpose of the claim requirement, which "is to give the government entity notice sufficient for it to investigate and evaluate the claim," has been satisfied. *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Authority*, 34 Cal. 4th 441, 446 (2004). Accordingly, this argument does not warrant dismissal of Plaintiffs' claims.

For their immunity argument, Defendants rely on California Government Code §§ 821.6 and 820.2. Section 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." Cal. Govt. Code § 821.6. In *Garmon v. County of Los Angeles*, 828 F.3d 837 (9th Cir. 2016), the Ninth Circuit, relying on *Sullivan v. County of Los Angeles*, 12 Cal. 3d 710 (1974), found that section 821.6 provided immunity from malicious prosecution claims only. *Id.* at 846-47. Because Plaintiffs do not allege a malicious prosecution claim here, section 821.6 does not apply.

/ / /

Section 820.2 states: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act of omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Govt. Code § 820.2. In *Liberal v. Estrada*, 632 F.3d 1064 (9th Cir. 2011), the Ninth Circuit held that immunity under this section "'is reserved for those basic policy decisions [which have] … been [expressly] committed to coordinate branches of government, and as to which judicial interference would thus be unseemly.'" *Id.* at 1084 (quoting *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1051 (2007)) (quotation marks omitted). Defendants have not shown the actions of the Individual Defendants fall into that category, and thus section 820.2 also does not warrant dismissal of Plaintiffs' state law claims. *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 639-40 (9th Cir. 2012) ("the burden rests with government defendants to demonstrate that they are entitled to § 820.2 immunity for a specific policy decision made by an employee who consciously balanced the decision's risks and benefits.")[6]

## C. The County's Motion

The County's motion is directed to Plaintiffs' *Monell* claim and their state law claims. As to the state law claims, the County's arguments rest on or repeat arguments raised by the Individual Defendants. (*See* County's Mot. at 14-15, 17-19) (reasserting arguments of immunity, Rule 8, failure to state a constitutional violation and failure to comply with the Tort Claims Act). The Court rests on the above discussion of these arguments, and will not address these arguments a second time in the context of the County's motion. Based on the above discussion, the County's motion to dismiss Plaintiffs' state law claims is denied.

On Plaintiffs' *Monell* claim, the County argues it is entitled to dismissal of this claim for a number of reasons. First, it asserts the Individual Defendants did not violate

---

[6] In light of this decision, the Court also rejects the County's argument that it is statutorily immune from Plaintiffs' state law claims.

Plaintiffs' constitutional rights. Second, the County contends Plaintiffs failed to cite a formal policy or a longstanding custom or practice. To the extent Plaintiffs have cited a policy, custom or practice, the County argues Plaintiffs have failed to allege any policy, custom or practice caused any violation of Plaintiffs' constitutional rights. Finally, the County asserts Plaintiffs have failed to set forth sufficient facts to support a *Monell* claim based on failure to train.

The County's first argument does not warrant dismissal of Plaintiffs' *Monell* claim because, as discussed above, the Court disagrees that Plaintiffs have failed to allege a violation of their constitutional rights in claims one through three.

The County's second and third arguments also do not warrant dismissal of the *Monell* claim. Although the County asserts Plaintiffs have failed to cite any policy, custom or practice, it concedes Plaintiffs have set forth a "grocery list" of County policies, customs and practices in the FAC. (*See* FAC ¶ 120.) Plaintiffs have also alleged that what happened to them was not an isolated event, (*see id.* ¶ 122) (alleging County conducts medical examinations without parental consent "on every child who enters Polinsky Center"); (*id.* ¶ 128) ("The [school] interview of the MINORS is not an isolated incident."), and that the alleged policy authorizing social worker interviews of children at school without a parent's consent was "the moving force" behind the violation of Plaintiffs' constitutional rights. (*Id.* ¶ 126.)

On the County's fourth argument, it appears Plaintiffs are alleging a *Monell* claim based on failure to train. (*See id.* ¶¶ 120.d, 125, 130.) "[A]s to a municipality, 'the inadequacy of police training may serve as the basis for 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.'" *Flores v. County of Los Angeles*, 758 F.3d 1154, 1158 (9th Cir. 2014) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). This means Plaintiffs "'must demonstrate a conscious or deliberate choice on the part of a municipality in order to prevail on a failure to train claim.'" *Id.* (quoting *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008)) (internal quotation marks omitted). "Under this standard, [Plaintiffs] must allege

facts to show that the County 'disregarded the known or obvious consequence that a particular omission in their training program would cause [municipal] employees to violate citizens' constitutional rights.'" *Id.* at 1159 (quoting *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 1360 (2011)). In the failure to train context, additional instances of misconduct are usually required to show deliberate indifference, however, a narrow range of possibilities exist where the need for training is so "obvious" as to be satisfied by a single incident. *Connick*, 563 U.S. at 64.

Here, as stated above, Plaintiffs have alleged that what happened to them was not a one-time event. Rather, they allege there have been other instances of children being subjected to medical examinations at Polinsky without their parent's consent, and that other social workers have interviewed children at school without their parent's consent. In light of these allegations, the County's motion to dismiss Plaintiffs' *Monell* claim is denied.

## III.

## CONCLUSION AND ORDER

For the reasons set out above, the Court grants in part and denies in part the Individual Defendants' motion and denies the County's motion. Specifically, the Court denies the motions to dismiss Plaintiffs' first claim, grants the motions to dismiss Plaintiffs' second claim, grants in part and denies in part the motions to dismiss Plaintiffs' third claim, grants the motion to dismiss Plaintiffs' fourth claim, and denies the motion to dismiss Plaintiffs' fifth, sixth, seventh and eighth claims. Pursuant to their request, Plaintiffs are granted leave to file a Second Amended Complaint that cures the pleading deficiencies set out above with respect to their fourth claim only. Plaintiffs are cautioned that if their Second Amended Complaint does not cure the deficiencies set out above, their claims will be dismissed with prejudice and without further leave to amend. If Plaintiffs wish to amend any of their claims consistent with this Order, they shall file a Second Amended Complaint

///

///

///

on or before **May 8, 2019**. If Plaintiffs fail to file a Second Amended Complaint by that date, the case will proceed as to the viable claims alleged in the First Amended Complaint.

**IT IS SO ORDERED**.

Dated: April 17, 2019

Hon. Dana M. Sabraw
United States District Judge